UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| RUGGED OAKES INVESTMENT, LLC, | Case No. 2:15-CV-240 JCM (CWH) |
| Plaintiff(s), | ORDER |
| v. | |
| EILEEN NELSON, et al., | |
| Defendant(s). | |

Presently before the court is plaintiff Rugged Oaks Investment's ("Rugged Oaks" or "plaintiff") renewed motion for summary judgment. (ECF No. 45).[1] Defendant Bank of New York Mellon, as successor to JP Morgan Bank, N.A., as trustee for Structured Asset Mortgage Investments II Trust 2005-AR7, mortgage pass-through certificates, Series 2005-AR7 a.k.a. JP Morgan Chase Bank, N.A. ("BNYM" or "defendant"), filed a response (ECF No. 53), to which plaintiff replied (ECF No. 55).

Also before the court is BNYM's motion for summary judgment. (ECF No. 46). Plaintiff filed a response (ECF No. 54), to which BNYM replied (ECF No. 56).

**I.     Facts**

This case involves a dispute over property that was subject to a homeowners' association ("HOA") superpriority lien for delinquent assessment fees. On July 18, 2005, Eileen Nelson ("Nelson") obtained a loan from First Horizon Home Loan ("FHHL") to purchase the subject property located at 5771 Magini Avenue, Las Vegas, Nevada 89141 (the "property"). (ECF No. 1-2).

---

[1] Parties were instructed to treat plaintiff's ECF No. 45 motion for leave to supplement the ECF No. 24 motion for summary judgment as a renewed motion for summary judgment. (ECF No. 49). Likewise, the court will construe it as such.

**James C. Mahan**
**U.S. District Judge**

To secure the loan, Nelson executed a first deed of trust encumbering the property, which was recorded on July 19, 2005. (ECF No. 46-2). Under the first deed of trust, Mortgage Electronic Registration Systems, Inc. ("MERS") was named nominee-beneficiary for FHHL. (ECF No. 46-2). Nelson later failed to make the requisite monthly payments and defaulted. (ECF No. 53).

On May 2, 2011, Alessi & Koenig, LLC ("A&K") recorded a notice of delinquent assessment on behalf of the HOA. (ECF No. 46-5). On August 10, 2011, A&K recorded a notice of default and election to sell under the HOA lien. (ECF No. 46-6). The notice of default asserted that Nelson owed $6,772.96 in past due assessments, late charges, interests, costs, and penalties. (ECF No. 46-6).

On or around August 19, 2011, A&K mailed (by certified mail, return receipt requested) a copy of the notice of default to the beneficiaries of record, which included MERS. (ECF No. 45 at 10, 43–48).

On October 26, 2011, MERS executed a corporate assignment of deed of trust, assigning its interest under the first deed of trust to BNYM. (ECF No. 46-3).

On May 25, 2012, A&K recorded a notice of trustee's sale. (ECF No. 46-7). On June 27, 2012, the HOA held a foreclosure sale and plaintiff purchased the property for $13,000.00. (ECF No. 46-8). On July 5, 2012, A&K recorded the trustee's deed upon sale. (ECF No. 46-8).

On October 12, 2012, the corporate assignment of deed of trust executed October 26, 2011, was recorded. (ECF No. 46-3).

Plaintiff filed the original complaint in state court on January 13, 2015, asserting one claim for quiet title/declaratory relief against defendants Eileen Nelson, David Nelson, BONY Mellon, CitiBank (West) FSB, the Internal Revenue Service ("IRS"), AACA/Account Management Services, the City of Las Vegas, Unifund CCR Partners, as assignee of Palisades Acquisition XVI, SouthWestUSA Bank, NV DHHS Division of Welfare & Supp Services, LVN Corporation, and MTC Corporation d/b/a Trustee Corps.[2] (ECF No. 1-2). Plaintiff contends that the HOA

---

[2] On April 29, 2015, plaintiff voluntarily dismissed its claims against defendant MTC Corporation d/b/a Trustee Corps. (ECF No. 20). On May 11, 2015, the court granted a stipulation between plaintiff and defendant NV DHHS Division of Welfare & Supp Services that stipulated to quiet title in the name of plaintiff as to any claims regarding interest in the property. (ECF Nos. 21, 22). On January 13, 2016, default judgment was entered against defendants AACA/Account

foreclosure sale extinguished defendants' interests in the property, including the first deed of trust that encumbered the property. (ECF No. 1-2).

Defendant IRS removed the action to federal court on February 11, 2015, pursuant to 28 U.S.C. §§ 1442 and 1444. (ECF No. 1).

Subsequently, plaintiff unsuccessfully moved for summary judgment (ECF No. 24) on its claim to quiet title and BNYM successfully countermotioned for Federal Rule of Civil Procedure 56(d) relief (ECF No. 26) to conduct discovery. (ECF No. 48).

In the instant motions, plaintiff moves for renewed summary judgment and BNYM moves for summary judgment.

Plaintiff asserts that summary judgment in its favor is proper because the foreclosure sale extinguished BNYM's deed of trust pursuant to NRS 116.3116 and *SFR Invs. Pool 1, LLC v. U.S. Bank, N.A.*, 334 P.3d 408 (Nev. 2014) and because BNYM lacks standing to assert commercial unreasonableness or due process. (ECF No. 45).

BNYM contends that summary judgment in its favor is appropriate because *SFR Investments* should not be applied retroactively, the foreclosure sale is void for insufficiency of price, and the notice scheme of NRS Chapter 116 is facially unconstitutional. (ECF No. 46).

The court will address each in turn.[3]

## II. Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a

---

Management Services, CitiBank (West) FSB, Unifund CCR Partners, as assignee of Palisades Acquisition XVI, and Eileen and David Nelson. (ECF No. 41). On February 3, 2016, the court granted a stipulation between plaintiff and defendant LVN Corporation that stipulated to quiet title in the name of plaintiff as to any claims regarding interest in the property. (ECF Nos. 42, 43). On March 18, 2016, a clerk's judgment was entered against defendant IRS. (ECF No. 52).

[3] As an initial matter, the court takes judicial notice of the following recorded documents: first deed of trust (ECF No. 46-2); notice of delinquent assessment (ECF No. 46-5); notice of default and election to sell (ECF No. 46-6); notice of trustee's sale (ECF No. 46-7); trustee's deed upon sale (ECF No. 46-8); and corporate assignment of deed of trust (ECF No. 46-3). *See, e.g.*, *United States v. Corinthian Colls.*, 655 F.3d 984, 998–99 (9th Cir. 2011) (holding that a court may take judicial notice of public records if the facts noticed are not subject to reasonable dispute); *Intri-Plex Tech., Inv. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).

**James C. Mahan**
**U.S. District Judge**

- 3 -

judgment as a matter of law." Fed. R. Civ. P. 56(a).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990).  However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis.  The moving party must first satisfy its initial burden.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

**James C. Mahan**
**U.S. District Judge**

- 4 -

1  versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626,
2  631 (9th Cir. 1987).

3  In other words, the nonmoving party cannot avoid summary judgment by relying solely on
4  conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040,
5  1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the
6  pleadings and set forth specific facts by producing competent evidence that shows a genuine issue
7  for trial. *See Celotex*, 477 U.S. at 324.

8  At summary judgment, a court's function is not to weigh the evidence and determine the
9  truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby*,
10 *Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all
11 justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the
12 nonmoving party is merely colorable or is not significantly probative, summary judgment may be
13 granted. *See id.* at 249–50.

14 **III.  Discussion**

15 Under Nevada law, "[a]n action may be brought by any person against another who claims
16 an estate or interest in real property, adverse to the person bringing the action for the purpose of
17 determining such adverse claim." Nev. Rev. Stat. § 40.010. "A plea to quiet title does not require
18 any particular elements, but each party must plead and prove his or her own claim to the property
19 in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v.*
20 *Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (citations and internal quotation
21 marks omitted). Therefore, for plaintiff to succeed on its quiet title action, it needs to show that
22 its claim to the property is superior to all others. *See also Breliant v. Preferred Equities Corp.*,
23 918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff
24 to prove good title in himself.").

25  . . .
26  . . .
27  . . .
28  . . .

**James C. Mahan**
**U.S. District Judge**

- 5 -

**A. Nev. Rev. Stat. § 116.3116**[4]

Section 116.3116(1) of the Nevada Revised Statutes gives an HOA a lien on its homeowners' residences for unpaid assessments and fines; moreover, NRS 116.3116(2) gives priority to that HOA lien over all other liens and encumbrances with limited exceptions—such as "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent."  Nev. Rev. Stat. § 116.3116(2)(b).

The statute then carves out a partial exception to subparagraph (2)(b)'s exception for first security interests.  *See* Nev. Rev. Stat. § 116.3116(2).  In *SFR Investment Pool 1 v. U.S. Bank*, the Nevada Supreme Court provided the following explanation:

> As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece.  The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust.  The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

334 P.3d 408, 411 (Nev. 2014) ("*SFR Investments*").

Chapter 116 of the Nevada Revised Statutes permits an HOA to enforce its superpriority lien by nonjudicial foreclosure sale. *Id*. at 415.  Thus, "NRS 116.3116(2) provides an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *Id.* at 419; *see also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale" upon compliance with the statutory notice and timing rules).

The holder of a first deed of trust may pay off the superpriority interest to keep its interest from being extinguished upon foreclosure of an HOA superpriority lien.  *See SFR Investments*, 334 P.3d at 414 ("But as a junior lienholder, U.S. Bank could have paid off the SHHOA lien to avert loss of its security . . . ."); *see also 7912 Limbwood Ct. Trust v. Wells Fargo Bank, N.A., et al.*, 979 F. Supp. 2d 1142, 1149 (D. Nev. 2013) ("If junior lienholders want to avoid this result, they readily can preserve their security interests by buying out the senior lienholder's interest." (citing *Carillo v. Valley Bank of Nev.*, 734 P.2d 724, 725 (Nev. 1987); *Keever v. Nicholas Beers Co.*, 611 P.2d 1079, 1083 (Nev. 1980))).

---

[4] The 2015 Legislature revised Chapter 116 substantially. 2015 Nev. Stat., ch. 266.  Except where otherwise indicated, the references in this order to statutes codified in NRS Chapter 116 are to the version of the statutes in effect in 2011 and 2012, when the events giving rise to this litigation occurred.

Plaintiff asserts that it has met its burden to show good title in itself because the foreclosure sale complied with NRS 116.3116 and *SFR Investments*. (ECF No. 45 at 12–13). Plaintiff argues that the recorded foreclosure deed provides conclusive effect regarding the statutory prerequisites to a valid HOA lien foreclosure sale. (ECF No. 45 at 13). Thus, as plaintiff maintains, the foreclosure sale extinguished BNYM's deed of trust as a matter of law. (ECF No. 45 at 13).

Subsection (8) of NRS 116.31166 provides that the recitals in a deed made pursuant to subsection 6 or 7 of:

> (a) Default, the mailing of the notice of delinquent assessment, and the mailing and recording of the notice of default and election to sell;
>
> (b) The elapsing of the 90-day period set forth in paragraph (c) of subsection 1 of NRS 116.31162;
>
> (c) The recording, mailing, publishing and posting of the notice of sale;
>
> (d) The failure to pay the assessments and other sums which are due in accordance with subsection 1 of NRS 116.3116 before the expiration of the period described in paragraph (d) of subsection 1 of NRS 116.31162; and
>
> (e) The recording of the affidavit required to be recorded pursuant to paragraph (e) of subsection 1 of NRS 116.31162, are conclusive proof of the matters recited.

Nev. Rev. Stat. § 116.31166(8). "The 'conclusive' recitals concern default, notice, and publication of the [notice of sale], all statutory prerequisites to a valid HOA lien foreclosure sale as stated in NRS 116.31162 through NRS 116.31164, the sections that immediately precede and give context to NRS 116.31166." *Shadow Wood Homeowners Assoc., Inc. v. N.Y. Cmty. Bancorp, Inc.*, 366 P.3d 1105, 1110 (Nev. 2016). Nevertheless, courts retain the equitable authority to consider quiet title actions when an HOA's foreclosure deed contains statutorily conclusive recitals. *See id.* at 1112.

Here, plaintiff has provided the recorded trustee's deed upon sale, as well as the recorded notice of delinquent assessment, the recorded notice of default and election to sell, and the recorded notice of trustee's sale. Pursuant to NRS 116.31166, these recitals in the recorded foreclosure deed are conclusive to the extent that they implicate compliance with NRS 116.31162 through NRS 116.31164, which provide the statutory prerequisites of a valid foreclosure. *See id.* at 1112 ("[T]he recitals made conclusive by operation of NRS 116.31166 implicate compliance only with the statutory prerequisites to foreclosure."). Therefore, pursuant to NRS 116.31166 and the

recorded foreclosure deed, the foreclosure sale is valid to the extent that it complied with NRS 116.31162 through NRS 116.31164.

In response, BNYM disputes that the foreclosure sale complied with the statutory prerequisites—namely NRS 116.31162 and NRS 116.311635. (ECF No. 53 at 6). According to BNYM, "neither of these requirements were met in this case" because (1) the lien miscalculated the total as $3,132.27 rather than $3,360.27 based on the line item costs provided, the default stated an amount of $6,772.96, and the notice of sale stated an amount of $5,581.22, and (2) the notice of sale provided that the sale would take place on June 20, 2012, but the foreclosure sale actually took place on June 27, 2012. (ECF No. 53 at 6–7).

The court rejects BNYM's argument. To begin, BNYM does not dispute that the notices were properly recorded or that they contained the requisite information. Rather, BNYM takes issue with the fact that the notices of lien, default, and sale state various deficiency amounts. BNYM does not dispute the accuracy of the actual deficiency amounts themselves. Even if it did, BNYM still fails to provide any evidence or accounting as to what the correct deficiency amount should be. Further, the miscalculation in the lien is harmless at best, particularly in light of the fact that an itemization of each cost was included. Thus, BNYM did not meet its burden to show that no genuine issues of material fact exists regarding the proper amount of the lien.

Moreover, while the foreclosure sale took place a week after the date set forth in the notice of sale, BNYM's argument is devoid of any support as to how this constitutes noncompliance with NRS 116.311635. In actuality, NRS 116.31164(4) governs the procedure for conducting a sale and provides in relevant part:

> [t]he association or other person conducting the sale may from time to time postpone the sale by such advertisement and notice as it considers reasonable or, without further advertisement or notice, by proclamation made to the persons assembled at the time and place previously set and advertised for the sale . . . .

Nev. Rev. Stat. § 116.31164(4).

Notably, BNYM does not argue that no proclamation was made on the original date set forth in the notice of sale. Instead, BNYM merely asserts that "[t]here is no evidence that the HOA or Alessi provided any notice that the sale was postponed." (ECF No. 53 at 7). This is insufficient to overcome summary judgment. *See Celotex*, 477 U.S. at 324.

James C. Mahan
U.S. District Judge

- 8 -

In light of the foregoing, the court will grant plaintiff's motion for summary judgment as it relates to the foreclosure sale's compliance with the statutory prerequisites to the extent set forth in NRS 116.31166. Importantly, while NRS 116.3116 accords certain deed recitals conclusive effect—*e.g.*, default, notice, and publication of the notice of sale—it does not conclusively, as a matter of law, entitle plaintiff to success on its quiet title claim. *Shadow Wood Homeowners Assoc., Inc.*, 366 P.3d at 1112 (rejecting contention that NRS 116.31166 defeats, as a matter of law, action to quiet title).

**B. Gross Inadequacy of Sale Price & Fraud, Unfairness, or Oppression**

BNYM asserts that the foreclosure sale is void because the $13,000.00 sale price is grossly inadequate in comparison to the market value of the property and because a number of irregularities leading up to the foreclosure sale exist. (ECF No. 46 at 2). In response, plaintiff argues that defendant's assertion fails because it cannot show fraud, oppressiveness, or unfairness. (ECF No. 54 at 3).

In *Shadow Wood Homeowners Assoc., Inc.*, the Nevada Supreme Court held that an HOA's foreclosure sale may be set aside under a court's equitable powers notwithstanding any recitals on the foreclosure deed where there is a "grossly inadequate" sales price and "fraud, unfairness, or oppression." 366 P.3d at 1110; *see also Nationstar Mortg., LLC v. SFR Invs. Pool 1, LLC*, --- F. Supp. 3d ----, No. 215CV00583RCJPAL, 2016 WL 1718374, at *2 (D. Nev. Apr. 29, 2016). In other words, "demonstrating that an association sold a property at its foreclosure sale for an inadequate price is not enough to set aside that sale; there must also be a showing of fraud, unfairness, or oppression." *Id*. at 1112; *see also Long v. Towne*, 639 P.2d 528 (Nev. 1982).

*1. Inadequate Price*

BNYM argues that the purchase price of $13,000.00 in light of the $246,000.00 property appraisal value is grossly inadequate because the purchase price is 5.3% of the property's value. (ECF No. 46 at 11). As support, BNYM provides the appraisal report of its appraiser R. Scott Dugan, wherein Dugan concluded that on or about June 27, 2012, the property's value was $245,000.00. (ECF No. 46-11).

James C. Mahan
U.S. District Judge

- 9 -

The general rule for gross inadequacy is 20% of fair market value. *See Shadow Wood Homeowners Assoc., Inc.*, 366 P.3d at 1112. In *Shadow Wood Homeowners Assoc., Inc.*, the court remanded for further fact-finding, but noted that it had in the past approved sales for as low as 28.5% and that the apparent 23% ratio in the case before it was not "obviously" inadequate. *See id.* (citing *Golden v. Tomiyasu*, 387 P.2d 989, 993 (Nev. 1963); Restatement (Third) of Prop.: Mortgages § 8.3 cmt. b (1997)).

Here, BNYM has satisfied its initial burden as to gross inadequacy by setting forth evidence that the property was purchased at the foreclosure sale for 5.3% of its market value. (*See* deed of trust, ECF No. 46-2 (securing $416,000.00); Dugan report, ECF No. 46-11 (estimating $246,000.00 value on date of foreclosure sale); foreclosure deed, ECF No. 46-8 (indicating sale for $13,000.00)); *see also Nationstar Mortg., LLC*, 2016 WL 1718374, at *3 (finding sale price of less than 5% of the secured amount sufficient to satisfy initial burden of showing gross inadequacy); *cf. Shadow Wood Homeowners Assoc., Inc.*, 366 P.3d at 1112 (finding purchase price reflecting 23% not obviously inadequate). Even assuming that the fair market value was only half of the appraised amount (*i.e.*, $123,000.00), the sale price would be less than 11% of the fair market value, which is less than half the amount generally required for gross inadequacy.

In response, plaintiff criticizes BNYM's appraisal report for its failure to take into account relevant factors such as the cost of litigating a quiet title action and other factors unique to HOA foreclosures. (ECF No. 54 at 5). Moreover, plaintiff asserts that the $13,000.00 sale price was the result of a competitive bidding process, which started at $5,581.22. (ECF No. 54 at 8). Plaintiff maintains that this bidding process in combination with the notices evidences that the sale was commercially reasonable. (ECF No. 54 at 8). Plaintiff contends that the property had a fair market value of $13,000.00 on the day of the foreclosure sale in light of the circumstances of the foreclosure sale and the uncertainty of how the Nevada Supreme Court would interpret the statute. (ECF No. 54 at 6).

However, plaintiff does not dispute $246,000.00 being a fair market value; rather, plaintiff takes issue with the method by which that value was computed. (ECF No. 54 at 5). While plaintiff asserts that BNYM's appraiser failed to consider relevant factors, it fails to apply those factors

James C. Mahan
U.S. District Judge

- 10 -

itself to support its assertion as to $13,000.00 being a fair market value or to set forth evidence to dispute BNYM's appraisal report—such as by producing its own expert report based on an alternative method that indicates a fair market value of $13,000.00. *See, e.g.*, *Nationstar Mortg., LLC*, 2016 WL 1718374, at *3 (denying summary judgment on gross inadequacy because opposing expert report concluded fair market value of $9,000.00 based on similar homes sold for similar amounts at similar HOA sales; finding reasonable jury could accept this theory over the traditional sales of comparable properties).

Nevertheless, the court finds that a reasonable jury could accept the theory that a competitive bidding process is the appropriate measure for market value rather than the measure used by BNYM's appraiser. Accordingly, the court will deny BNYM's motion for summary judgment as it relates to the issue of gross inadequacy.

### 2. *Fraud, Unfairness, or Oppression*

On a motion for summary judgment, BNYM must also demonstrate sufficient grounds to justify setting aside the foreclosure sale. In other words, inadequate price is not enough to warrant setting aside a foreclosure sale; there must also be a showing of fraud, unfairness, or oppression. *See Shadow Wood Homeowners Assoc., Inc.*, 366 P.3d at 1112; *Long*, 639 P.2d at 530.

BNYM maintains that irregularities in the foreclosure sale justify the foreclosure sale's invalidation. (ECF No. 46 at 12). In particular, BNYM argues that the notices did not accurately describe the deficiency payment amount owed and notice of sale set forth an inaccurate date of sale without providing any notice of postponement. (ECF No. 46 at 13). BNYM thus contends that these deficiencies could have caused potential investors to make unwarranted assumptions and deterred them from bidding on the property. (ECF No. 46 at 12).

In response, plaintiff contends that BNYM fails to establish any fraud, oppression, or unfairness was present and that, even if it did, such elements require findings of fact. (ECF No. 54 at 4). Plaintiff also asserts that it was a bona fide purchaser for value. (ECF No. 54 at 5).

"When sitting in equity . . . courts must consider the entirety of the circumstances that bear upon the equities. This includes considering the status and actions of all parties involved, including

**James C. Mahan**
**U.S. District Judge**

- 11 -

whether an innocent party may be harmed by granting the desired relief." *Shadow Wood Homeowners Assoc., Inc.*, 366 P.3d at 1112.

The issue of bona fide purchaser ("BFP") status is distinct from that of the conclusiveness of deed recitals. Specifically, the issue of BFP status concerns a buyer's knowledge of competing interests, whereas the other concerns a statutory presumption that can be equitably overcome under *Shadow Wood Homeowners Assoc., Inc. See, e.g.*, *Nationstar Mortg., LLC*, 2016 WL 1718374, at *4.

A BFP is a person who purchases real property "for a valuable consideration and without notice of the prior equity, and without notice of facts which upon diligent inquiry would be indicated and from which notice would be imputed to him, if he failed to make such inquiry." *Bailey v. Butner*, 176 P.2d 226, 234 (Nev. 1947) (emphasis omitted); *see also Moore v. De Bernardi*, 220 P. 544, 547 (Nev. 1923) ("The decisions are uniform that the bona fide purchaser of a legal title is not affected by any latent equity founded either on a trust, [e]ncumbrance, or otherwise, of which he has no notice, actual or constructive."). Under Nevada law, "bona fide purchaser" means as follows:

> Any purchaser who purchases an estate or interest in any real property in good faith and for valuable consideration and who does not have actual knowledge, constructive notice of, or reasonable cause to know that there exists a defect in, or adverse rights, title or interest to, the real property is a bona fide purchaser.

Nev. Rev. Stat. § 111.180(1).

Here, plaintiff seeks to quiet title claiming a right to the property as the foreclosure purchaser. As a result, plaintiff's status as a potentially innocent third party that would be harmed by setting aside the foreclosure sale is at issue. *See Shadow Wood Homeowners Assoc., Inc.*, 366 P.3d at 1115. Therefore, genuine issues of material fact exist to preclude summary judgment.

Accordingly, the court will deny BNYM's motion for summary judgment as it relates to this issue.

### C. Retroactive Application of *SFR Investments*

BNYM posits that the court should not apply *SFR Investments* retroactively to extinguish its deed of trust. (ECF No. 46 at 6).

The retroactivity issue has been certified to the Nevada Supreme Court in other District of Nevada cases. *See, e.g.*, *Christiana Trust v. K&P Homes*, No. 2:15-cv-1534, 2016 WL 923091, at *2 (D. Nev. Mar. 9, 2016). Therefore, the court will not issue a ruling on the issue of retroactivity at this time. If BNYM prevails at trial, the court will then determine whether to stay judgment during the pendency of the Nevada Supreme Court's resolution of the issue. Accordingly, the court will deny BNYM's motion for summary judgment as to this issue.

**D. Due Process**

In its motion, BNYM asserts that the notice scheme of NRS Chapter 116 is facially unconstitutional in violation of the due process clause. (ECF No. 46 at 14).

This court has previously found that allowing an HOA lien to extinguish a first position deed of trust to be unjust and a violation of due process. *See, e.g.*, *Premier One Holdings, Inc. v. BAC Home Loans Servicing LP*, No. 2:13-CV-895 JCM GWF, 2013 WL 4048573, at *4 (D. Nev. Aug. 9, 2013). In so finding, this court explained that permitting an HOA lien to wipe out a prior deed of trust contravenes the principles and purpose of a race-notice jurisdiction. *See id.*

Under traditional common law, the rule of competing interests in real property is "first in time, first in right." 11 David A. Thomas, *Thompson on Real Property* § 92.03, at 97 (2008) (citing Ralph W. Aigler, *The Operation of the Recording Acts*, 22 Mich. L. Rev. 405, 406 (1924) ("[F]irst in time was first in right because there was nothing left for the second transferee.")).

As an exception to the harsh common law "first in time, first in right" rule, states enacted recording statutes. To varying degrees, recording statutes protect BFPs of real property against subsequent adverse claims thereto and provides a mechanism for prior grantees to put subsequent purchasers on notice. *See, e.g.*, *First Nat'l Bank v. Meyers*, 161 P. 929, 931 (Nev. 1916) ("One need but revert to the fact that recordation is for the purpose of giving notice to the world").

Here, MERS assigned the first deed of trust to BNYM on October 26, 2011, but BNYM failed to record the corporate assignment until a year later, on October 12, 2012—months after the foreclosure sale, which took place on July 27, 2012. (*See* corporate assignment, ECF No. 46-3 (executed October 26, 2011); notice of trustee sale, ECF No. 46-7 (recorded May 25, 2012)).

James C. Mahan
U.S. District Judge

- 13 -

Typically, recording statutes are classified as "notice," "race," or "race-notice" statutes. "Nevada is a race notice state." *Buhecker v. R.B. Petersen & Sons Constr. Co., Inc.*, 929 P.2d 937, 939 (Nev. 1996) (citing Nev. Rev. Stat. §§ 111.320; 111.325)). Section 111.325 of the NRS provides as follows:

> Every conveyance of real property within this State hereafter made, which shall not be recorded as provided in this chapter, shall be void as against any subsequent purchaser, in good faith and for a valuable consideration, of the same real property, or any portion thereof, where his or her own conveyance shall be first duly recorded.

Nev. Rev. Stat. § 111.325. Stated differently, a later-obtained interest can prevail over an earlier-obtained interest in Nevada where the later purchaser is a BFP—purchaser for value without notice of the previous interest—who records its interest first.

Because NRS 116.3116, as interpreted by *SFR Investments*, permits the extinguishment of an earlier recorded interest by a later recorded interest, it contravenes the principles and purpose of BFP status and Nevada's recording statute.

In *Bourne Valley Court Trust v. Wells Fargo Bank, NA*, the Ninth Circuit held that NRS 116.3116's "opt-in" notice scheme, which required an HOA to alert a mortgage lender that it intended to foreclose only if the lender had affirmatively requested notice, facially violated mortgage lenders' constitutional due process rights. --- F.3d ----, No. 15-15233, 2016 WL 4254983 (9th Cir. Aug. 12, 2016).

Because the Ninth Circuit mandate has not been issued in that case, the court declines to render a decision on this issue at this time.

**IV.    Conclusion**

Based on the foregoing, the court grants summary judgment in favor of plaintiff as to compliance with the provisions of NRS 116.31162 through NRS 116.31168. Because the record prevents a finding that the foreclosure sale extinguished BNYM's deed of trust as a matter of law under NRS 116.3116 and *SFR Investments*, the court denies summary judgment to both parties as to the remaining issues.

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

- 14 -

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiff's renewed motion for summary judgment (ECF No. 45) be, and the same hereby is, GRANTED IN PART and DENIED IN PART, consistent with the foregoing.

IT IS FURTHER ORDERED that BNYM's motion for summary judgment (ECF No. 46) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that BNYM's motion for leave to file supplemental authority in support of motion for summary judgment (ECF No. 67) be, and the same hereby is, DENIED as moot.

DATED September 23, 2016.

_____
UNITED STATES DISTRICT JUDGE